This is an appeal from a decree in chancery dismissing the bill of complaint, the purpose of which was to compel the surrender and cancellation of a bond executed by the complainant and to obtain an injunction restraining the defendant from proceeding with an action at law which had resulted in the entry of a judgment in the defendant's favor.
Weissman, a master plumber, bought materials from Grunt and installed them in the house of Cupolo. Cupolo did not pay Weissman and the latter did not pay Grunt. Financial clouds were gathering above Cupolo, and to obtain security for Grunt, and, as Grunt says, for Weissman also, this expedient was resorted to: Grunt used one Cagan as an instrument *Page 105 
and gave Cagan a check for $12,000. Cagan loaned the $12,000 to Cupolo, giving him a check for that sum and taking back a bond and mortgage executed by Cupolo, which bond Weissman also signed. Cupolo endorsed Cagan's check over to Weissman and Weissman endorsed it back to Grunt. Thus Grunt's money came back to him after a brief but busy journey. Soon the storm broke, engulfed Cupolo and swept away his property. Cupolo was adjudicated a bankrupt and when Cagan undertook to prove the mortgage, the United States district court adjudged that the mortgage was void on the ground that it was not supported by a valuable consideration. But the court provided in its order that this was without prejudice to the right of the holder of the bond to any action or proceeding thereon in any other court. Cagan assigned the bond to Grunt. Grunt then sued Weissman in the Essex county circuit court on two counts, being respectively on the book account and for goods sold and delivered. In that action Weissman admitted the correctness of the book account and admitted the delivery of the merchandise but pleaded payment by the check of $12,000. Thereupon Grunt, by amendment, added to his complaint a third count grounded in the bond but claiming only the amount of the book account, approximately $9,000. At this juncture Weissman filed an answer alleging that the bond was part of a scheme to defraud creditors and hence invalid. The answer was struck and judgment was rendered against Weissman for $9,815.73, from which judgment no appeal was taken. Weissman in the pending action seeks to have the bond surrendered and canceled and to have Grunt barred from collecting any money on the bond or on the judgment.
Appellant presents to us two points: First, that the evidence justified a finding that the complainant Weissman had no knowledge of the true character of the transaction and that he did not participate in the scheme to defraud creditors, and, second, that the decree of the court was erroneous in that it failed to grant the injunction on the ground that the bond was admittedly an incident in a fraudulent scheme to defraud creditors, and that it was a mere incident to a mortgage *Page 106 
given for the debt, both of which, so it is said, were admittedly fictitious according to the defendant's testimony.
The evidence is confused and conflicting, but through the haze some facts stand out clearly. It is conceded that in this transaction, to repeat the characterization used by defendant's counsel, "Cagan is Grunt." No real money passed. There was a ceremony of handing a check from one to another. The check was in the amount of $12,000. The sum then owing from Weissman to Grunt — so the vice-chancellor found, and, we think, with reason — was about $7,000. Ultimately the account grew to $9,400. Had the job been completed as originally planned, the amount would have been about $10,000. But Weissman, if his story be true, was paying Grunt $12,000. Why? Weissman was asked that question and gave no satisfactory answer. That omission is significant. Weissman got no receipt. Statements of the account continued to come from Grunt to Weissman with no credit for the alleged payment. Another incident with a significant aspect is that Weissman did sign the bond. The testimony strongly indicates a conspiracy to enable Grunt and Weissman, with the knowledge and participation of both, to secure themselves unlawfully at the expense of other creditors and lienors. From our consideration of the entire case we conclude that no fraud was perpetrated on the complainant and that he had full and contemporaneous knowledge of the nature and incidents of the transaction in which he engaged. If, as complainant alleges, the bond was an incident in a scheme to defraud creditors, then his hands were soiled by the very iniquity which he now denounces, and it follows that he, having been a party to the fraud, will, on well known equity principles, be denied equitable relief. Weidmann Silk Dyeing Co. v. EastJersey Water Co., 88 N.J. Eq. 397.
Respondent contends that the alleged fraud was so pleaded, considered and disposed of in and by the circuit court as to make it, within the principle stated and decisions cited by Vice-Chancellor Van Fleet in Dringer v. Receiver of ErieRailway, 42 N.J. Eq. 573, res adjudicata, subject to proper *Page 107 
appeal but not to injunctive restraint in the court of chancery; and also that complainant, if otherwise deserving, would not be entitled to an injunction to stay the proceedings on the circuit court judgment without making the deposit or filing the bond required by section 64 of the Chancery act. 1 Comp. Stat. 434.
In view of our finding, we deem it unnecessary to consider these matters.
The decree below will be affirmed.
For affirmance — THE CHIEF-JUSTICE, TRENCHARD, LLOYD, CASE, BODINE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 10.
For reversal — None.